[Civ. No. 23671. First Dist., Div. Three. Feb. 9, 1968.]

ERIC ROTHSCHILD, Cross-complainant and Respondent, v. RUDOLPH H. ERDA, as Temporary Administrator, etc., Cross-defendant and Appellant.

Shirley, Saroyan, Cartwright & Peterson, Cartwright, Saroyan, Martin & Sucherman and Jay R. Martin for Cross-defendant and Appellant.

Barbieri, Giometti, McCarthy & Steiner and Robert J. Barbieri for Cross-complainant and Respondent.

BROWN (H. C.), J.—This is an appeal from an order granting a preliminary injunction restraining Rudolph Erda, a resident of New York and temporary administrator of the estate of Arthur Rothschild, from prosecuting all suits or claims in an estate matter pending in New York. Appellant appeared specially at the San Francisco hearing for the limited purpose of contesting the jurisdiction of the superior court to hear the matter.

The granting of the injunction arose out of the following circumstances: Arthur Rothschild, a resident of New York, died testate January 24, 1964, in Israel where he had spent the last three years of his life. His will provides that his entire estate, consisting of stocks and bonds situated in the City of New York in the possession of the brokerage firm of Hornblower & Weeks, be divided equally between his two sons, Eric and Elchanan Rothschild. Eric was a resident of San Francisco and Elchanan was a resident of New York. Twenty days prior to Arthur Rothschild's death, Eric obtained from Arthur Rothschild a written authorization transferring to himself securities valued at approximately $175,000, had these securities transferred into his own name but permitted them to remain in New York. On April 14, 1964, at Eric's direction, the stocks were delivered into the possession of Schwabacher & Company, a brokerage house in San Francisco, for Eric's own account.

On May 11, 1964, after the discovery of the transfer of the securities to Schwabacher, Donald Collins applied for and was appointed special administrator of the estate of Arthur Rothschild, deceased, by the Superior Court at San Francisco. As such administrator, he instituted proceedings to quiet title to the securities, claiming that they were a part of the estate of Arthur Rothschild, deceased. He also obtained an injunction against Eric and the custodian Schwabacher & Company

restraining disposition of these securities until further order of the court. Eric Rothschild filed an answer to this complaint and a cross-complaint claiming title to the securities.

While discovery proceedings were pending in the action initiated by Collins in San Francisco, appellant Rudolph Erda, who had been duly appointed as administrator of the estate of Arthur Rothschild in New York, filed suit on behalf of the estate of Arthur Rothschild in the Supreme Court of New York, asserting title to the securities and asking judgment to annul the transfer of the securities to Eric Rothschild. He also applied to the New York Surrogate's Court for an order directing respondent to transfer the securities to its clerk. This application was denied because of pendency of the California action.

Eric, after filing the cross-complaint, applied to the California Superior Court to enjoin Rudolph Erda, the special administrator in the New York probate proceedings, from instituting any proceedings in New York relative to a claim of title to the securities held in California.[1]

The California Superior Court held that Rudolph Erda, as the temporary administrator of the estate in New York, was regularly and personally served with summons and a copy of the cross-complaint pursuant to the order of publication and section 413 of the Code of Civil Procedure, and granted the restraining order which is the subject of this appeal. That order provided as follows: ''. . It Is Hereby Ordered that said application be and the same is hereby granted and the cross-defendants Donald O. Collins, as Special Administrator of the Estate of Arthur Rothschild, Deceased, and Rudolph H. Erda, Temporary Administrator of the Estate of Arthur Rothschild, Deceased, . . . are hereby restrained and enjoined from prosecuting or further prosecuting in any manner any and all suits, actions, proceedings, claims or demands against said cross-complainant Eric Rothschild arising out of or in any way pertaining to the securities involved in this action or the rights, interests and title of the parties in and to said securities, . . . and are specifically restrained and enjoined from . . . otherwise proceeding with the action brought by said Erda, as Temporary Administrator of the Estate of Arthur Rothschild, Deceased, against Eric Rothschild and others in the Supreme Court of the State of New York . . . during the pendency of this action. . . .''

---

[1]Rudolph Erda was named a cross-defendant in the cross-complaint as a first doe and served with summons and complaint in New York.

██ The only issue presented by this appeal is whether the preliminary injunction against appellant is void for lack of personal jurisdiction over the appellant.

The circumstances under which a personal judgment may be rendered in California are set forth in Code of Civil Procedure, section 417, which provides: "Where jurisdiction is acquired over a person who is outside of this State by publication of summons in accordance with Sections 412 and 413, the court shall have the power to render a personal judgment against such person *only* if he was personally served with a copy of the summons and complaint, *and* was a resident of this State (a) at the time of the commencement of the action, or (b) at the time that the cause of action arose, or (c) at the time of service." (Italics added.)

It is undisputed that the appellant Rudolph Erda did not reside within the State of California at any of the times specified in section 417 of the Code of Civil Procedure. The only appearance appellant has made in this state during any time relevant was a special appearance to challenge the jurisdiction of the trial court. ██ It is well settled that jurisdiction over the parties is necessary for the validity of any judgment *in personam*. (Code Civ. Proc., § 1917; *Pennoyer* v. *Neff*, 95 U.S. 714 [24 L.Ed. 565]; *First Nat. Bank* v. *Eastman*, 144 Cal. 487, 490 [77 P. 1043, 103 Am.St.Rep. 95, 1 Ann. Cas. 626]; *Chaplin* v. *Superior Court*, 81 Cal.App. 367, 371 [353 P. 954]; *Pierce* v. *Superior Court*, 1 Cal.2d 759, 763 [37 P.2d 453, 460, 96 A.L.R. 1020]; *Comfort* v. *Comfort*, 17 Cal.2d 736, 741 [112 P.2d 259]; *Glaston* v. *Glaston*, 69 Cal.App.2d 787, 791 [160 P.2d 45]; *White* v. *Patton*, 87 Cal. 151, 152 [25 P. 270]; *Pinon* v. *Pollard*, 69 Cal.App.2d 129 [158 P.2d 254]; *Allen* v. *Superior Court*, 41 Cal.2d 306, 309 [259 P.2d 905].) *A restraining order is a decree in personam. (Berger* v. *Superior Court*, 175 Cal. 719, 721 [167 P. 143, 15 A.L.R. 373]; *Comfort* v. *Comfort, supra*, 17 Cal.2d 736, 741; 1 Witkin, Cal. Procedure (1954) Provisional Remedies, § 14, p. 852; 1 Witkin, Cal. Procedure (1954) Jurisdiction, § 53, p. 324.) ██ In *Hartford* v. *Superior Court*, 47 Cal.2d 447, 453 [304 P.2d 1], the court held that where a defendant was not at any relevant time a domiciliary of California, section 417 of the Code of Civil Procedure precluded entry of a personal judgment against him.

A similar factual situation to the instant case existed in *Josephson* v. *Superior Court*, 219 Cal.App.2d 354 [33 Cal. Rptr. 196]. In that case an action was commenced in San

Francisco on a promissory note naming the petitioner as a defendant. Petitioner filed a motion to quash service of summons alleging he was not a resident of the State of California, and, in fact, had been a resident of the State of Nevada where he was a registered voter and in business, and that while vacationing in Hawaii he was served personally with process pursuant to an order for publication issued by the California Superior Court. The petitioner Josephson made a special appearance to quash service of summons. At page 361 the court said: " 'The test as to whether an appearance is general or special is, "Did the party appear and object only to consideration of the case or any procedure in it because the court had not acquired jurisdiction over the person of the defendant or party? If so, then the appearance is special. If, however, he appears and asks for any relief which could be given only to a party in the pending case, or which itself would be a regular proceeding in the case, it is a general appearance regardless of how adroitly, carefully or directly the appearance may be denominated or characterized as special. The rule in this regard may be epitomized by saying that if a defendant by his appearance insists only upon the objection that he is not in court for want of jurisdiction over his person and confines his appearance for that purpose only, then he has made a special appearance, but if he raises any other question, or asks any relief which can only be granted upon the hypothesis that the court has jurisdiction of his person, then he had made a general appearance." (*Judson* v. *Superior Court*, 21 Cal.2d 11, 13 [129 P.2d 361]; see also *Hernandez* v. *National Dairy Products Co.*, 126 Cal.App.2d 490 [272 P.2d 799].)' (*Armstrong* v. *Superior Court*, 144 Cal.App.2d 420, 423 [301 P.2d 51].)'' The court also said at pages 360-361: "It is undisputed that petitioner did not, at any time relevant herein, reside within the State of California. Therefore, service upon him outside the state was ineffectual to give the court power to enter a personal judgment against him [citations], unless he voluntarily made a general appearance in the action.''

▮ Respondent argues that the activities of appellant in this state were sufficient to manifest appellant's presence, and that therefore the California court obtained personal jurisdiction to grant the restraining order. Respondent relies on the language contained in the opinion of the court in *Atkinson* v. *Superior Court*, 49 Cal.2d 338, 345-346 [316 P.2d 960], where the court said: "It is significant that with respect to jurisdiction to tax intangibles [citation], jurisdiction over foreign

corporations [citations], and jurisdiction to adjudicate trust obligations [citation], emphasis is no longer placed on actual or physical presence but on the bearing that local contacts have to the question of over-all fair play and substantial justice. A similar change in emphasis has been taking place with respect to personal jurisdiction over individuals. [Citations.] 'But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' (*International Shoe Co.* v. *Washington, supra*, 326 U.S. 310, 316 [90 L.Ed. 95, 101, 66 S.Ct. 154, 161 A.L.R. 1057].) "

The facts in *Atkinson* v. *Superior Court, supra,* differ from the case at bench. There the plaintiffs were two groups of musicians who were attacking the validity of bargaining contracts between their employers and the American Federation of Musicians, which had its principal office in New York and operated from that city, but they did have agents and many activities concerning the employment in San Francisco.

The decision in *Atkinson* does not stand for the proposition contended by respondent that personal jurisdiction was obtained over a citizen of New York who was not a resident of this state at the time of commencement of the action, or at the time of service. The court there held that because of the nature of the property involved, which was located in the State of California, the relative contacts were significant only in deciding whether due process permitted a more limited or quasi in rem jurisdiction to determine plaintiff's interest in the intangibles in question.

The court in *Hanson* v. *Denckla*, 357 U.S. 235, 250-251 [2 L.Ed.2d 1283, 1296, 78 S.Ct. 1228] stated: "As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer* v. *Neff*, 95 U. S. 714 [24 L.Ed. 565], to the flexible standard of *International Shoe Co.* v. *Washington*, 326 U. S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057]. But it is a mistake to

assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See *Vanderbilt* v. *Vanderbilt*, 354 U. S. 416, 418 [1 L.Ed.2d 1456, 1459, 77 S.Ct. 1360, 1362]. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. See *International Shoe Co.* v. *Washington*, 326 U.S. 310, 319 [90 L.Ed. 95, 103, 66 S.Ct. 154, 159, 161 A.L.R. 1057].''

We fail to find the minimal contacts in California that are a prerequisite to the superior court's exercise of power over Rudolph Erda in New York. The appellant's appearance in California was special in order to challenge the jurisdiction of the court and as appellant was not a resident of this state at the commencement of the action or at the time of service of process as provided in section 417 of the Code of Civil Procedure, the trial court did not have jurisdiction over his person and was therefore precluded from granting the restraining order.

The order is reversed.

Draper P. J., and Salsman, J., concurred.